**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

WILFREDO COLON-ANDINO, et al.,

**Plaintiffs,**

**v.**

PEDRO TOLEDO-DAVILA, et al.,

**Defendants.**

**CIVIL NO.** 08-1234 (FAB)

**OPINION AND ORDER**

BESOSA, District Judge.

On February 22, 2008 Wilfredo Colon-Andino, along with his wife, Carmen Nieves-Baez, and their conjugal partnership, his father, Wilfredo Colon-Velez, and his mother, Margarita Andino-Moreno (collectively referred to as "plaintiffs"), filed a complaint against defendants both in their personal and official capacities (the latter for injunctive relief only), as members of the Puerto Rico Police Department ("PRPD").[1] (Docket No. 1) Pursuant to 42 United States Code § 1983, the plaintiffs contend that defendants subjected them to violations of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

[1] Defendants are: Pedro Toledo-Davila, the Superintendent of the PRPD; Roberto Rivera-Miranda, Commander of the Drug Division of the PRPD Bayamon Area; Reynaldo Bermudez-Ortiz, Commander of the Bayamon Area of the PRPD; Pedro J. Velazquez-Gonzalez, Commander of the Guaynabo Area of the PRPD; police officers Jose M. Donate, Braulio Gonzalez-Nieves, and Karina Ojeda; three unknown PRPD officers "James Moe," "Peter Poe," and "Robert Foe;" and two unknown PRPD supervising officers "John Doe" and "Richard Roe."

Plaintiffs also claim violations pursuant to local law and the Constitution of Puerto Rico.

On May 7, 2008, defendants Toledo-Davila and Donate moved to dismiss the complaint for, among other things, failure to state a claim pursuant to Rule 12(b)(6). (Docket No. 8) On June 4, 2008, plaintiffs opposed the motion to dismiss. (Docket No. 17) On July 14, 2008, defendants Gonzalez-Nieves, Ojeda, Rivera-Miranda, Bermudez-Ortiz, and Velazquez-Gonzalez moved to join the motion to dismiss (Docket No. 31) which this Court granted on July 15, 2008. (Docket No. 32)[2] For the reasons discussed below, the Court **GRANTS in part and DENIES in part** defendants' motion to dismiss.

**FACTUAL BACKGROUND**

The Court draws the following facts from the plaintiffs' complaint (Docket No. 1) and takes them as true for the purpose of resolving defendants' motion.

[2] Only defendants Toledo-Davila and Donate appeared on the original motion to dismiss. Defendants Gonzalez-Nieves, Ojeda, Velazquez-Gonzalez, and Rivera-Miranda defaulted, having failed to submit any response to the complaint timely. The Court set aside the default entry, however, and permitted the remaining defendants to join the dismissal motion. (Docket Nos. 32 and 36) Because the original motion to dismiss refers only to two defendants, Toledo-Davila and Donate, and the remaining named defendants provided no supplemental analysis specifying how the legal defenses asserted apply to each of the joining individual defendants, the motion to dismiss as it now stands contains very little to connect the defense standards to the actual defendants in this case. The defendants' counsel seems to expect the Court to connect the dots for them, in effect doing the lawyering on behalf of their clients, because no effort was made to guide the Court as to the joined defendants.

Plaintiff Wilfredo Colon-Andino ("Colon-Andino") owned a barber shop and tattoo parlor called "Ink and Pleasure"[3] in Levittown, Puerto Rico. Next door to "Ink and Pleasure" is another business, "La Cava de los Dominicos," which is owned by Gilberto Ramirez-Rosado ("Ramirez-Rosado"). The two business owners apparently enjoyed an amicable relationship until they disagreed about the use of parking spaces, presumably near both places of business.

Problems between Colon-Andino and Ramirez-Rosado escalated to such a point that Ramirez-Rosado threatened to kill Colon-Andino, warned Colon-Andino that he had influence with high-ranking police officials in the PRPD, and initiated a "smear campaign" against Colon-Andino within the community alleging that Colon-Andino was involved in illegal actions. As a result of Ramirez-Rosado's smear campaign Colon-Andino filed a criminal complaint against Ramirez-Rosado on February 26, 2007.[4]

On May 1, 2007, police officer Jose M. Donate ("Donate") issued a citation to Colon-Andino requiring Colon-Andino's appearance on May 7, 2007 at the Criminal Investigations Bureau ("CIC" for the Spanish language acronym). At the CIC on May 7, 2007, Donate informed Colon-Andino of an anonymous phone call

[3] The name of the shop was formerly "D'Look."

[4] There is no information in the plaintiffs' pleadings about the outcome of the criminal complaint.

received by the PRPD stating that a white individual with a golden Pathfinder vehicle was threatening people by alleging he was a police officer. Donate told Colon-Andino that the alleged complaint "came from upstairs," which Colon-Andino took to mean that the order for his citation came from higher ranking officers within the police department. Colon-Andino told Donate that he could not be the individual mentioned in the complaint because he (Colon-Andino) is not white and does not own a golden Pathfinder. Donate never showed Colon-Andino the complaint allegedly filed against him, yet he nevertheless questioned Colon-Andino regarding personal information such as his address, description of his car, and place of business. After obtaining that information from Colon-Andino, Donate informed Colon-Andino that the complaint against Colon-Andino was closed.

On May 8, 2007, Wilfredo Colon-Velez ("Colon-Velez"), also a plaintiff in this case and the father of Wilfredo Colon-Andino,[5] called Donate to discuss what he viewed as the inappropriate and illegal meeting between Donate and Colon-Andino on May 7th at the CIC. Colon-Velez requested a copy of the alleged complaint against his son, and warned Donate that he would file an administrative complaint against Donate for illegal questioning. Donate refused

[5] The plaintiffs note that Colon-Velez is a retired police officer.

to provide a copy of the alleged complaint against Colon-Andino and then abruptly hung up the phone.

The following day, May 9, 2007, police officers Karina Ojeda ("Ojeda") and Braulio Gonzalez-Nieves ("Gonzalez-Nieves"), both defendants in this case, along with several other unknown officers, executed an illegal search warrant and proceeded to search Colon-Andino's place of business, "Ink and Pleasure." Although the officers possessed a search warrant, the warrant contained false information referring to alleged illegal transactions occurring in front of "Ink and Pleasure" involving an individual that had exited "Ink and Pleasure." The warrant was based on the sworn testimony of defendant police officer Gonzalez-Nieves who allegedly saw movement in "Ink and Pleasure" on dates when the business was closed because Colon-Andino was out of the country. Furthermore, Gonzalez-Nieves also gave testimony identifying a car involved in the illegal transaction. That car is not owned by Colon-Andino; it is owned by a former employee of "Ink and Pleasure" who, on the date the car was identified, did not go into or drive by the "Ink and Pleasure" business. That ex-employee had also experienced problems with the owner of the neighboring business, Ramirez-Rosado, related to the use of certain parking spaces. The plaintiffs contend that all of this information was fabricated in order to execute the search warrant used to gain entry into Colon-Andino's place of business.

Following the execution of the illegal search warrant based on false information, officer Ojeda and another unidentified police officer entered "Ink and Pleasure." While Ojeda interacted with a customer, the unknown officer twice entered the bathroom facilities and planted marijuana there, after which that officer left the premises and another officer entered[6] with a drug-detecting canine which subsequently marked the existence of a controlled substance, marijuana, in the bathroom where it had been planted. No other controlled substance was found. Immediately thereafter, Colon-Andino was arrested.

During the search of "Ink and Pleasure" and Colon-Andino's subsequent arrest, police officers used excessive and unnecessary force: five officers inside the business, approximately five patrol cars outside, and the demonstration of many "long guns." The excessively dramatic scene at the time of the search and arrest negatively affected Colon-Andino's reputation.[7] Plaintiffs believe that the execution of the search warrant was "irregular," because after Colon-Andino was arrested, handcuffed, taken out of the business, and ordered to close the business, he was then ordered to open the business, his handcuffs were removed, and he was "forced

[6] Plaintiffs indicate this entering officer was assigned to the K-9 unit.

[7] Plaintiffs also note that Colon-Andino has no criminal record or history of violence that would justify the alleged display of force.

to pose for a photograph holding the search warrant inside the business." Plaintiffs also say that there were several objects not listed in the search warrant that were illegally seized,[8] including Colon-Andino's camera, computer and jump drive. During the drive from "Ink and Pleasure" to the police station, officer Gonzalez-Nieves asked Colon-Andino if the security cameras at "Ink and Pleasure" were working, and asked that Colon-Andino remember that he, officer Gonzalez-Nieves, was always with Colon-Andino and did not do anything during the event.[9]

At the police station following his arrest, Colon-Andino requested and was denied a phone call either to his father or to an attorney. The officers proceeded to interrogate Colon-Andino without reading him his rights, requesting information about his wife's place of employment and his children's school. In addition, numerous officers photographed Colon-Andino with their personal cameras. After several hours in the interrogation room, Colon-Andino was taken to a cell and detained for several more hours. Officer Gonzalez-Nieves told Colon-Andino and his father, Colon-Velez, that the entire matter could end ("esto se puede quedar

[8] According to the plaintiffs, the search warrant stated that the search was authorized specifically for controlled substances.

[9] The Court understands plaintiffs to allege this fact in order to demonstrate officer Gonzalez-Nieves's fear that the security cameras recorded illegal police behavior and wished to distance himself from it by telling Colon-Andino that he had not participated in any illegal action.

aqui" - meaning, this all could be ended here) which plaintiffs believe insinuated that the entire situation was fabricated.

Following his detention at the police station, officers Ojeda and Gonzalez-Nieves took Colon-Andino to his residence and asked him to surrender his gun and his permit to possess it. The officers told Colon-Andino that he would be able to collect his gun at the Arms Deposit at the PRPD's General Headquarters following the judicial proceedings against him.

Colon-Andino was charged with possession of a controlled substance. At a preliminary hearing on July 10, 2007, the charges were dropped. Officer Gonzalez-Nieves failed to come to the courtroom where the preliminary hearing was held despite being at the courthouse that day.[10]

On September 25, 2007, Colon-Andino went to collect his gun and permit from the Weapons Deposit. Once there, he was told his gun and permit were never deposited and therefore could not be returned to him. Colon-Andino had not received either his gun or his permit at the time plaintiffs filed their complaint in this case.

Police officers harassed the plaintiffs until almost the time their complaint was filed: an unmarked police car (a white RAV-4 that plaintiffs say was the same car driven by officer Ojeda on the

[10] The Court assumes that plaintiffs included this fact to imply that Gonzalez-Nieves wanted to distance himself from what was a fabricated prosecution against Colon-Andino.

day of Colon-Andino's arrest) has driven by the plaintiffs' house numerous times; and the plaintiffs have received several phone calls allegedly made from Police Headquarters in Levittown[11] during which a caller asked authoritatively to speak with Wilfredo Colon but hung up when asked to identify himself.

On September 27, 2007, the plaintiffs notified Superintendent Toledo-Davila, through counsel, of their claims against members of the police department. Their letter was received on October 1, 2007. They received no response. On January 11, 2008, the plaintiffs sent another letter, again through counsel, to Toledo-Davila notifying him that Colon-Andino's gun and permit remained missing and requesting an investigation. This letter was received on January 15, 2008. Plaintiff received no response to this letter either.

Plaintiffs filed their complaint on February 22, 2008. First, plaintiffs charge supervisors with supervisory liability under 42 U.S.C. § 1983, thereby violating plaintiffs' rights under the Fourth, Fifth, and Fourteenth Amendments. Secondly, also pursuant to 42 U.S.C. § 1983, plaintiffs charge all supervisory defendants with failure to take remedial action, including proper discipline of officers and failure to take actions such as dismissal or suspension to deter unlawful conduct. Thirdly, again under 42

[11] Plaintiffs state that they discovered the origin of the calls by using the *69 service.

U.S.C. § 1983 plaintiffs charge defendant with failure to train and retrain properly for reckless or callous training and retraining of police officers. Fourthly, plaintiffs charge defendants with violating plaintiffs' rights under Article II of the Constitution of Puerto Rico and article 1802 of the Civil Code, Laws of P.R. Ann. tit 31 § 5141.[12]

Defendants base their motion to dismiss on the following grounds: (1) the claim against the defendants in their official capacities should be dismissed because the Puerto Rico Police Department is immune under the Eleventh Amendment; (2) defendants Toledo-Davila and Donate are entitled to qualified immunity; (3) plaintiffs have failed to state a claim against defendant Donate; (4) claims against defendant Toledo-Davila should be dismissed because he is protected by the *non-respondeat* superior liability doctrine; (5) plaintiffs do not state a claim of

[12] The Court notes that the complaint's structuring of its causes of action is confusing at best and fails to link the factual allegations it contains to specific constitutional or statutory violations, as distinct from the prayer for relief. The first, second and third causes of action all relate to a theory of liability (supervisory liability) without charging a particular defendant(s) with violation of a specific amendment. Claims alleging a Fourth Amendment violation, Fifth Amendment violation or Fourteenth Amendment violation ought to be distinct. The supervisor liability claims ought to specify which defendants are charged as supervisors and cite specific facts supporting the liability of each supervisor defendant. As the complaint now reads, the plaintiffs' attorney has failed to label claims diligently or properly, leaving them implied or suggested by the narrative of alleged facts, such that those claims must now be properly identified by this Court. The liberal nature of Rule 8(e) is no defense for lazy lawyering.

supervisory liability under section 1983 against defendants Toledo-Davila and Donate; (6) plaintiffs failed to state a claim of substantive due process under the Fourteenth Amendment; (7) plaintiffs failed to state a claim under the Fifth Amendment; (8) plaintiffs failed to state an emotional distress claim;[13] and (9) all pendant claims should be dismissed.[14]

**DISCUSSION**

**A. UNNAMED DEFENDANTS**

As an initial matter, the Court addresses the unnamed defendants who appeared on the plaintiffs' complaint but have since been unaddressed either in a motion from plaintiffs to amend their complaint or to request additional time to serve those defendants. Further, the plaintiffs have failed to show good cause for their failure to name and serve the unnamed defendants within the time specified (120 days) by the Federal Rules. Therefore, pursuant to

---

[13] In their opposition to the motion to dismiss, plaintiffs state they did not include in their complaint a claim for damages pursuant to the common law claim of "intentional infliction of emotional distress" and that their requests for damages arise only under 42 U.S.C. § 1983 and article 1802 of the Civil Code. (Docket No. 17 at 22) As such, the Court need not discuss intentional infliction of emotional distress.

[14] As mentioned previously, the defendants' motion to dismiss contains several grounds for dismissal specifically regarding the sufficiency of claims against the two defendants originally moving for that dismissal, Toledo-Davila and Donate. Because the joining defendants did nothing to supplement those grounds with analysis relating to the joining defendants, the Court understands that the joining defendants have unabashedly put the burden on the Court to apply the analysis for dismissal applying to Toledo-Davila and Donate to them.

the Federal Rules of Civil Procedure,[15] the Court hereby **DISMISSES WITHOUT PREJUDICE** all unnamed defendants in the complaint.

**B. PLAINTIFFS' STANDING UNDER SECTION 1893**

The Court finds that all plaintiffs except Wilfredo Colon-Andino, the owner of "Ink and Pleasure," do not have standing to sue under section 1983, because none of the other plaintiffs alleges personally-suffered injuries due to defendants' actions. (Docket No. 1) Article III of the Constitution limits standing in federal courts to persons who have suffered injury in fact, and recovery is not ordinarily permitted for the injury of another. Allen v. Wright, 468 U.S. 737, 751 (1984). See also Elk Grove Unified Sch. Dist. V. Newdow, 542 U.S. 1, 17-18 (2004). A claim under 42 U.S.C. § 1983 must allege an injury to a cognizable interest, and that injury must be ". . . causally related to the challenged conduct" such that the injury may be addressed by the litigation in question. Pagan v. Calderon, 448 F.3d 16, 27 (1st Cir. 2006).

Only plaintiff Colon-Andino meets these stringent requirements, allowing this Court's jurisdiction. Colon-Andino's place of business was closed due to stigma following his unlawful

[15] Fed.R.Civ.P. 4(m)in pertinent part provides:

> If a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time.

arrest and prosecution. In stark contrast, neither his father, mother, or wife (or their conjugal relationship) have allegedly suffered as a result of the defendants' conduct. Accordingly, all claims made pursuant to section 1983 by plaintiffs Wilfredo Colon-Velez, Margarita Andino-Moreno, Carmen Nieves-Baez, and the conjugal partnership between Colon-Andino and his wife are hereby **DISMISSED.** Their tort claims pursuant to article 1802 and the Puerto Rico Constitution, however, remain.

**C. MOTION TO DISMISS STANDARD**

Pursuant to Rule 12(b)(6), a complaint should be dismissed when a plaintiff does not "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if it "raises a right to relief above the speculative level," Bell Atl. Corp., 550 U.S. at 570, by pleading enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft, 129 S.Ct. at 1949. The Court will accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. Id.; see also Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51 (1st Cir. 1990). The Court need not credit, however, "bald assertions [and] unsupportable conclusions" when evaluating the complaint's allegations, Aulson v. Blanchard, 83 F.3d 1, 3 (1st

Cir. 1996), nor "accept as true a legal conclusion couched as a factual allegation," Bell Atl. Corp., 550 U.S. at 570 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

**D. ELEVENTH AMENDMENT IMMUNITY**

The Eleventh Amendment bars suits in federal court for money damages against states unless one of four exceptions apply.[16] Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority, 991 F.2d 935, 938 (1st Cir. 1993). This protection from suit extends to the Commonwealth of Puerto Rico.[17] Immunity from suit also extends from the state itself to its instrumentalities, also known as "alter egos" of the state.[18] Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico, 818 F.2d 1034, 1036 (1st Cir. 1987); see Mount Healthy City School Dist. Bd. Of Educ. v. Doyle, 429 U.S.

---

[16] The four exceptions to Eleventh Amendment immunity are (1) where a state consents to suit in a federal forum, (2) where a state waives its own immunity by statute or the like, (3) where Congress abrogates state immunity (so long as Congress speaks clearly and acts in furtherance of particular powers), or (4) under certain circumstances other constitutional imperatives may take precedence over the Eleventh Amendment's federal-court bar. Metcalf, 991 F.2d at 938.

[17] In an unbroken string of cases, the First Circuit Court of Appeals has consistently held that Puerto Rico is considered a State for the purposes of the Eleventh Amendment. See, e.g., Negron Gaztambide v. Hernandez Torres, 145 F.3d 410 (1st Cir. 1998); Metcalf & Eddy, 991 F.2d 935, 939 n.3 (1st Cir. 1993); Litton Indus., Inc. v. Colon, 587 F.2d 70 (1st Cir. 1978).

[18] It is well-established that the Puerto Rico Police Department is an arm or alter-ego of Puerto Rico. See McLeod-Lopez v. Algarin, 603 F.Supp.2d 330, 343 (D.P.R. 2009) (citing Nieves Cruz v. Comm. of P.R., 425 F.Supp. 2d 188, 192 (D.P.R. 2006); Lopez-Rosario v. Police Dept., 126 F.Supp. 2d 167, 170-171 (D.P.R. 2000)).

274, 280 (1977). Immunity even extends to state officials "when the state is the real, substantial party in interest," such as when a suit is brought against a state official in his official capacity. Will v. Michigan Dept. of State Police, 491 U.S. 58, 89-91 (1989); Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101 (1984); Bernier-Aponte v. Izquierdo-Encarnacion, 196 F.Supp.2d 93, 98-99 (D.P.R. 2002).

None of this means, however, that state officers cannot be sued in their official capacity. Individual state officers can be sued in their official capacities for prospective and injunctive relief to end continuing or ongoing violations of federal law. Ex Parte Young, 209 U.S. 123, 160 (1908) Official-capacity actions for prospective relief are not treated as actions against the state. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) To put it differently, Eleventh Amendment immunity does not reach to non-monetary, prospective injunctive relief.

Defendants argue that the Eleventh Amendment to the United States Constitution bars the plaintiffs' monetary claims against them in their official capacities as members of the Police Department. (Docket No. 8 at 4) Plaintiffs argue that because their second and third causes of action against the defendants request prospective declaratory and injunctive allowed under section 1983 and not barred by the Eleventh Amendment, dismissal of their claims is unwarranted. (Docket No. 17 at 21)

The Court has reviewed the complaint. The second and third[19] causes of actions only allege that the supervising defendants did not take remedial actions and did not adequately train and retrain defendants. (Docket No. 1, ¶¶ 5.1-5.4 and 6.1-6.4) Specifically, the plaintiffs' request that supervisory defendants be "enjoined from failing to comply with their duties to adequately train, supervise and discipline police officers to protect civilians from violations of their constitutional rights" and "ordered to take remedial actions in order to deter the illegal conduct displayed by co-defendants." (Docket No. 1 at 21 and 22)

Because plaintiffs appear properly to have brought their causes of action against defendants in their official capacity for injunctive relief only, because that relief was specified in the complaint, and because the defendants submit no argument related to

[19] The second and third causes of action, as stated by the plaintiffs in their complaint are: Failure to Take Remedial Action and Failure to Properly Train and Retrain. (Docket No. 17 at 21; Docket No. 1 at 18-19) As earlier noted, the Court views these as claims all falling under one theory of liability - supervisory liability - and thus analyzes them together below.

the injunctive relief as it was specified by the plaintiffs,[20] the motion to dismiss under the Eleventh Amendment is **DENIED.** Lest there be any mistake, any and all existing claims against defendants in their official capacity for money damages are hereby **DISMISSED, with prejudice.**

**E. 42 U.S.C. § 1983**

"Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right." Omni Behavioral Health v. Miller, 285 F.3d 646, 650-51 (8th Cir. 2002); see also Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000). It is well settled that in order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements: (1) that the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected rights, privileges, or

[20] In fact, the defendants' Eleventh Amendment immunity defense contains not one sentence that is not part of what is clearly a template (or "boiler-plate") standard. There is no reference to the facts, much less a competent argument applying the law to these facts. Bare motions are no better than bare pleadings. Templates or "boiler-plate" submissions do nothing to guide the Court in the particular case before it, and relying on a series of strung-together templates, as the defendants' motion to dismiss brazenly does, shoulders the responsibility of lawyering squarely on the Court's shoulders. The clear expectation is that the Court will do the lawyering and perceive intuitively the interplay between facts and law. This Court will no longer tolerate the underlying disrespect for judicial resources that this sort of indolent lawyering belies. In the future, should this Court have before it motion papers containing template standards lacking any application to the facts of the case at hand, it will deny those grounds for dismissal summarily.

immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989). Hence, to succeed in a section 1983 action, plaintiffs must prove that defendants actions were a cause in fact or a proximate cause of their injury. See Collins v. City Harker Heights, 503 U.S. 115 (1992).

Related to section 1983, defendants argue that (1) the plaintiffs have failed to state a claim against defendant Donate; (2) claims against defendant Toledo-Davila should be dismissed because he is protected by the *non-respondeat* superior liability doctrine; (3) plaintiffs do not state a claim of supervisory liability under section 1983 against defendants Toledo-Davila and Donate; (4) plaintiffs failed to state a claim of substantive due process under the Fourteenth Amendment; and (5) plaintiffs failed to state a claim under the Fifth Amendment. Because many of these arguments are redundant or overlap, the Court addresses these grounds for dismissal by examining first the issue of supervisory liability under section 1983 and, second, whether plaintiffs have

properly alleged claims under section 1983 for violations of the Fourth, Fifth and Fourteenth Amendments, respectively.[21]

**1. Supervisory Liability**

Under section 1983, a supervisory official may be held liable for his subordinates' behavior only if (1) his subordinates' behavior results in a constitutional violation; and (2) the official's action or inaction was affirmatively linked to that behavior such that "it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988)) (internal quotation marks omitted).

Supervisory liability may be found either where the supervisor directly participated in the unconstitutional conduct or where the supervisor's conduct amounts to "tacit authorization." See Camilo-Roble v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999). Plaintiffs must show that each individual defendant was involved personally in the deprivation of constitutional rights because no

[21] Once again, the Court takes a dim view of plaintiffs' counsel's failure to specify the theories upon which they rely for each and every Constitutional Amendment cited in the complaint. Counsel seems to view the Constitution as merely a buffet table of violations ripe for listing in any complaint, leaving the Court to fill in the logical blanks. Given the plaintiffs' counsel's failure to link the various factual allegations to specific constitutional violations, the Court has, where easily possible, connected the factual allegations to the most likely theory of liability.

*respondeat superior* liability exists under section 1983. Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984). A supervisor need not have actual knowledge of the offending conduct to be liable; a supervisor's behavior may be deemed liable "by formulating a policy, or engaging in a custom, that leads to the challenged occurrence." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994). Thus, a supervisor may be liable "for the foreseeable consequences of such conduct in he would have known of it but for his deliberate indifference or wilful blindness, and if he has the power and authority to alleviate it." Id.

The defendants' motion to dismiss asserts that plaintiffs do not state a claim of supervisory liability under section 1983 against Superintendent Toledo-Davila and police officer Donate and that the claims against defendant Toledo-Davila should be dismissed because he is protected by the *non-respondeat* superior liability doctrine. As mentioned above, all remaining named defendants joined the motion to dismiss without adding any analysis to these grounds for dismissal.

Plaintiffs assert three causes of action which all fall under the umbrella of supervisory liability. These include claims that supervisors failed to supervise members of the PRPD properly; that supervisors permitted PRPD officers to engage in an unlawful practice or custom; that supervisors failed to take remedial action against rogue police officers; that supervisors failed to monitor

and evaluate the performance of PRPD officers; and that supervisors failed to train and retain PRPD officers properly.

Plaintiffs fail to identify the "supervisory defendants" in their causes of action other than Superintendent Pedro Toledo-Davila.[22] Instead, at the outset of their complaint, plaintiffs describe the positions held by each defendant. Some of these defendants have titles indicating that they hold a supervisory position: Toledo-Davila as "Superintendent" of the PRPD; Rivera-Miranda as "Commander of the Drug Division" of the PRPD in Bayamon; Bermudez-Ortiz as "Commander" of the PRPD in Bayamon; and Velazquez-Gonzalez as "Commander" of the PRPD in Guaynabo. Thus the Court infers that those defendants with supervisory position are those targeted by plaintiffs for supervisory liability. Despite the fact that these titles indicate that the individuals holding them may have acted as supervisors in the PRPD, their names appear nowhere else in the complaint, therefore no facts are alleged linking them to the alleged violations. Further, the plaintiffs' causes of action themselves do not specify these individuals as supervisors properly liable under section 1983; the causes of action merely assign supervisory liability to

[22] The defendants ask this Court to dismiss supervisory liability claims against police officer Donate. Because the facts do not assert, either directly or indirectly, that Donate was a supervisor (rather, the plaintiffs list Donate as among the *supervised* officers directly responsible for the offending behavior), the Court will not address supervisor liability against defendant Donate.

"Superintendent Pedro Toledo Davila and other supervisory defendants . . .". (Docket No. 1 at 16)

As to those defendants whose supervisory liability is alleged only as a consequence of job title and a vague reference to "other" supervisory defendants in the listed causes of action, the plaintiffs' pleadings have asserted nothing but legal conclusions, and are therefore insufficient to sustain the claims of supervisory liability. See Ashcroft v. Iqbal, __ U.S. at __, 129 S.Ct. at 1950, 2009 WL 1361536 (holding that "while legal conclusions can provide the framework of a complaint, they must be well-supported by factual allegations").

Therefore, all claims against defendants Rivera-Miranda, Bermudez-Ortiz, and Velazquez-Gonzalez are hereby **DISMISSED.**

The only remaining defendant subject to supervisory liability is Superintendent Toledo-Davila. Plaintiffs allege, among other things, that Toledo-Davila "permitted, tolerated and knowingly acquiesced to an official pattern, practice or custom of the police officers including co-defendants Karina Ojeda, Jose M. Donate, Braulio Gonzalez-Nieves . . . who participated in the intervention with plaintiff Wilfredo Colon-Andino." (Docket No. 1 at 17) Plaintiffs further allege that Toledo-Davila "knew or should have known . . . of the negligent behavior and propensity for fabrication of cases against innocent citizens" of the offending officers "and turned a blind eye to [the] problematic

rogue police officers in failing to properly supervise them and take remedial action against them." Id.

The Court finds that the allegations of the complaint do not allege a link between Toledo-Davila and the alleged constitutional violations sufficient to survive the motion to dismiss. The First Circuit Court of Appeals, relying on the Supreme Court's holding in Iqbal, recently found that the pleadings against a Mayor defendant were deficient: Despite the fact that the Mayor promulgated a policy and was present for and participated in the contested action resulting from that policy, the First Circuit Court of Appeals held that the pleadings did not "involve a policy of the Municipality for which he is responsible" nor did the pleadings "rest on his personal conduct." Maldonado v. Fontanes, ___ F.3d ___, 25, 2009 WL 1547737 (1st Cir. (Puerto Rico)) In this case, the plaintiffs have simply stated the elements of supervisory liability but have offered no details regarding what policy Toledo-Davila enacted or ignored that would have prevented the constitutional violations; no details regarding how or why Toledo-Davila should have or did know about the alleged violations; nor details regarding how training or retraining or supervision or any of his responsibilities as a supervisor would have or could have stopped the alleged violations from occurring. Without such details, the assertions here "amount to nothing more than a 'formulaic recitation of the elements'" of a supervisory

liability claim. Iqbal, 129 S.Ct. at 1951 (quoting Twombly, 550 U.S. at 555 (2007)). "The Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." Id. at 1953.

Therefore, all claims against Toledo-Davila for supervisory liability are **DISMISSED.**

**2. Fourth Amendment**

The Fourth Amendment protects against unreasonable searches and seizures.[23] U.S. Const. Amend. IV ("[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized"). The Fourth Amendment is implicated only if defendants' conduct infringed on "an expectation of privacy that society is prepared to consider reasonable." O'Conner v. Ortega, 480 U.S. 709, 715 (1987)(internal citation and quotation omitted). Whether a seizure is reasonable is a situational inquiry, requiring a "balance between the public interest and the individual's right to personal security free from

[23] Protection from unreasonable searches and seizures under the Fourth Amendment has been made applicable to the states by the Fourteenth Amendment. See Maryland v. Pringle, 540 U.S. 366 (2003).

arbitrary interference by law officers." United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975).

Plaintiffs claim that defendant police officers Ojeda, Donate and Gonzalez-Nieves violated their Fourth Amendment rights by initiating false claims against Colon-Andino, executing a warrant based on false information, entering and searching "Ink and Pleasure" without a valid warrant or probable cause, planting evidence in Colon-Andino's place of business, arresting Colon-Andino without probable cause leading to false imprisonment and the initiation of criminal proceedings against him, and seizing Colon-Andino's property -- e.g. his weapons permit and gun -- without probable cause. Each one of these factual allegations alone clearly constitutes a plausible Fourth Amendment violation. Together the claims allege malicious prosecution on the part of defendants against Colon-Andino.

The First Circuit Court of Appeals has "assumed without deciding that malicious prosecution can, under some circumstances, embody a violation of the Fourth Amendment and thus ground a cause of action under section 1983." Nieves v. McSweeny, 241 F.3d 45, 54 (1st Cir. 2001) (quoting Roche v. John Hankcock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996); Albright v. Oliver, 510 U.S. 266, 275-76 (1994)(recognizing that an alleged deprivation of the right to be free from prosecution without probable cause might be judged

under the Fourth Amendment).[24] To establish malicious prosecution under section 1983, a plaintiff must establish the elements of malicious prosecution under state law and the deprivation of a federal constitutional right. Nieves 241 F.3d at 54 (1st Cir. 2001); See also Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999). Further, the prosecution alleged must involve the unreasonable seizure pursuant to some "legal process." Heck v. Humphrey, 512 U.S. 477, 484 (1994) (finding that the common law cause of action for malicious prosecution "permits damages for confinement imposed pursuant to some legal process"). Under Puerto Rico common law, a claim for malicious prosecution requires that: (1) a criminal action was initiated and instigated by defendants; (2) a criminal action terminated in favor of plaintiff; (3) the defendants acted with malice and without probable cause; and (4) plaintiff suffered damages.

Plaintiffs' complaint clearly establishes a plausible malicious prosecution claim arising under the protections of the Fourth Amendment. The complaint easily meets the first prong of malicious prosecution, stating that Colon-Andino was called in for an interview based upon a fabricated complaint as a scare tactic; that a search warrant was executed based on false information

---

[24] There appears to be a split among the circuits regarding the extent to which a claim of malicious prosecution is actionable pursuant to section 1983 for a Fourth Amendment violation. Cacho-Torres v. Miranda-Lopez, 2009 WL 10348773 at *10, n. 7 (D.P.R. 2009) (citing Albright, 510 U.S. at 271 n. 4).

leading to a search of Colon-Andino's place of business without probable cause; and that evidence was planted in that place of business leading to Colon-Andino's unlawful arrest, subsequent custodial interrogation, seizure of his property, and the initiation of criminal proceedings against him. The second prong is also met; the charges against Colon-Andino were dropped at a preliminary hearing. The third prong is met because plaintiffs allege that the defendants acted with malice, fabricating all evidence against Colon-Andino and arresting and prosecuting him without probable cause. Finally, the plaintiffs meet the fourth prong, claiming that Colon-Andino was stigmatized by the prosecution, forced to move out of his place of business despite having payed his rental payments timely, harassed by members of the PRPD, and anguished by the entire ordeal.

Plaintiffs also allege that defendants Donate, Ojeda and Gonzalez-Nieves violated their Fourth Amendment rights by using excessive force during the search of "Ink and Pleasure" and Colon-Andino's subsequent arrest. To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed a level of force that was unreasonable under the circumstances. Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007). Whether the force employed is reasonable "must be judged from the perspective of the reasonable officer on the scene." Graham v. Conner, 490 U.S. 386, 396 (1989). The inquiry

into the reasonableness of the officer is an objective one, determined "in light of the facts and circumstances" faced by the officer "without regard to their underlying intent or motivation." Id. at 397.

Plaintiffs allege excessive force because there were five police officers inside "Ink and Pleasure," five patrol cars outside of the store and many "long guns" paraded around during the search and arrest proceedings. Given that the plaintiffs allege that the entire prosecution against Colon-Andino was the result of fabrication, malice and corruption in the PRPD, no force at all would be reasonable. Accordingly, at this juncture, and without further evidence, the Court finds that the plaintiffs have stated a claim of excessive force in violation of the Fourth Amendment.

Therefore, the defendants' motion to dismiss plaintiffs' Fourth Amendment claims arising pursuant to section 1983 against defendants Ojeda, Donate and Gonzalez-Nieves is **DENIED**.

**3. Fourteenth Amendment**

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that certain substantive rights - life, liberty, and property - "cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). To establish a procedural due process claim, a plaintiff must show that he or she had a liberty or property interest and, second, that defendants, acting

under color of state law, deprived him or her of that interest without a constitutionally adequate process. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982); PFZ Properties, Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). To establish a substantive due process claim, a plaintiff must show that a state actor deprived him or her of a life, liberty, or property interest, "and that he did so through conscience-shocking behavior." Estate of Benner v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008) (citing Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008)).

The plaintiffs base their Fourteenth Amendment claim on the deprivation of Colon-Andino's liberty and the seizure of his property resulting from a fabricated prosecution against him. Together, members of the Puerto Rico Police Department fabricated an entire case against Colon-Andino, conduct which plaintiffs believe shocks the conscience. These are the same factual allegations made in support of the plaintiffs' Fourth Amendment claim, analyzed above.

The Supreme Court has held that "because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically-intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Graham v. Conner, 490 U.S. 386, 395 (1989). Following the Supreme Court's holing in Graham, the First Circuit Court of

Appeals has rejected alleged deprivations of substantive due process rights under the Fourteenth Amendment based either on excessive force or on malicious prosecution. Estate of Bennett v. Wainwright, 548 F.3d 155 (1st Cir. 2008) (dismissing a substantive due process claim for deprivation of a life interest because the claim was based on excessive force more appropriately brought under the Fourth Amendment); Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 51-53 (1st Cir. 2005) (holding that an excessive force claim is governed by the Fourth Amendment's "objectively reasonable" standard rather than the Fourteenth Amendment's "shock the conscience" standard); Roche v. John Hancock Mutual Life Ins., 81 F.3d 249, 256 (1st Cir. 1996) (holding that "[t]here is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution") (internal citation omitted).

The civil actions raised by plaintiffs are appropriately controlled by the Fourth, not the Fourteenth, Amendment. Accordingly, plaintiffs' section 1983 claims brought against defendants for deprivations of due process pursuant to the Fourteenth Amendment are hereby **DISMISSED.**

**4. Fifth Amendment**

The plaintiffs claim that the defendants violated the Fifth Amendment by failing to read Colon-Andino his rights (as safeguarded by Miranda v. Arizona, 384 U.S. 436 (1966)) and denying

him counsel upon his request while he was in custody at the police station following his arrest.

The Fifth Amendment, which applies to the states through the Fourteenth Amendment, Malloy v. Hogan, 378 U.S. 1 (1964), protects individuals from being compelled to be witnesses against themselves in any criminal case. U.S. Const. Amend. V. All that the Fifth Amendment forbids, however, is the introduction of coerced statements into trial. See United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990) ("The privilege against self-incrimination is a fundamental trial right of criminal defendants. Although conduct by law enforcement officials prior to trial may ultimately impair that right, a constitutional violation occurs only at trial") (internal citations omitted). See also, New York v. Quarles, 467 U.S. 649, 686 (1984) (Marshall, J., dissenting). The Supreme Court has explained that it has "created prophylactic rules designed to safeguard the core constitutional right protected by the Self-Incrimination Clause." Chavez v. Martinez, 538 U.S. 760, 770 (2003) (internal quotations and citations omitted). "Rules designed to safeguard a constitutional right" - "do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person." 538 U.S. 760, 771 (2003).

The plaintiffs here have failed to satisfy the basic requirements showing a Fifth Amendment violation because Colon-Andino was never compelled to be a witness against himself; the complaint alleges no facts showing that any statements made by Colon-Andino during his custodial interrogation were admitted as testimony against him in a criminal case. All that the complaint alleges is that Colon-Andino was charged for possession of a controlled substance and that during the preliminary hearing, the charge against him was dropped. Though two prophylactic safeguards against self-incrimination (*Miranda* warnings and counsel) were not provided to Colon-Andino, this showing by itself is not enough to establish any violation of the Fifth Amendment.[25] Accordingly, all claims against defendants pursuant to the Fifth Amendment are hereby **DISMISSED.**

[25] Though plaintiffs did not assert any violation of the Sixth Amendment, no cause of action under section 1983 for a Sixth Amendment violation could be established on these facts either, because plaintiffs have not shown that Colon-Andino was prejudiced by having been questioned without his counsel present. Pasdon v. Peabody, 417 F.3d 225, 228 (1st Cir. 2005) (citing Cinelli v. Revere, 820 F.2d 474, 476-77 (1st Cir. 1987) (section 1983 claim for violation of Sixth Amendment right to counsel requires "showing of prejudice" in form of "realistic possibility of injury to the defendant or benefit to the state").

**F. Qualified Immunity**

Defendants argue that they are entitled to qualified immunity.[26] The qualified immunity doctrine protects government officers and employees from suit on federal claims for damages where, in the circumstances, a reasonable official could have believed his conduct was lawful. Olmeda v. Ortiz-Quiñones, 434 F.3d 62 (1st Cir. 2006); Rodriguez-Rodriguez v. Ortiz-Velez, 391 F.3d 36, 41 (1st Cir. 2004). To determine whether defendants are entitled to qualified immunity, courts have typically followed a two-pronged approach, deciding (1) whether the plaintiffs have alleged the deprivation of an actual constitutional right, and 2) whether the right was clearly established at the time of the alleged action or inaction. In the First Circuit Court of Appeals the second prong has generally involved two aspects of further inquiry regarding the clarity of the law at the time of the alleged violation and whether an objectively reasonable defendant would

[26] In this case, the Court finds little guidance from the movants (defendants) regarding their qualified immunity ground for dismissal. Defendants offer what is clearly a template ("boiler plate") summary of the law on qualified immunity that is outdated and fails to apply the qualified immunity analysis to the facts of this case adequately. Defendants failed to specify whether qualified immunity applies to all claims made by the plaintiffs, none, or some. Because plaintiffs have made claims based on three separate amendments, the Fourth, Fifth, and Fourteenth, it would make sense and be helpful for the defendants to advise the Court in their motion papers as to the applicability of the qualified immunity doctrine on each of these statutorily based claims. The Court feels little inclination to do any party's research for him or her, and this case is no exception.

have believed that the action taken violated that clearly established constitutional right. See id.; Vazquez-Valentin v. Santiago-Diaz, 459 F.3d 144, 154, n.6 (1st Cir. 2006) (citing Wilson v. City of Boston, 421 F.3d 45, 52-53 (1st Cir. 2005)). The First Circuit Court of Appeals has explained that "[t]he salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional. Maldonado v. Fontanes, ___ F.3d at ___, 2009 WL 1547737, 4 (citing Hope v. Peltzer, 536 U.S. 730, 741 (2002)).

Recently, the First Circuit Court of Appeals' interpretation of recent Supreme Court jurisprudence has clarified the method of qualified immunity inquiry regarding the order and number of the prongs. "In administering the [Supreme] Court's test, this circuit has tended to list separately the two sub-parts of the 'clearly established' prong along with the first prong and, as a result, has articulated the qualified immunity test as a three-part test." Id. (internal citations omitted). "While the substance of our three-part test has been faithful to the substance of the Court's two-part test, we owe fidelity to the [Supreme] Court's articulation of the test as well" - "And so we now adopt the [Supreme] Court's two-part test and abandon our previous usage of a three step analysis." Id. In Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808 (2009), the Supreme Court reiterated that the qualified immunity analysis

requires a two-pronged test. It held, however, that lower courts need not address those prongs in any particular order even though it may be sometimes be beneficial to do so. See Maldonado v. Fontanes, ___ F.3d at ___, 2009 WL 1547737, 5.

The Court has concluded that the plaintiffs only state actionable section 1983 claims against defendants Ojeda, Donate and Gonzalez-Nieves for the alleged use of excessive force and malicious prosecution in violation of the Fourth Amendment. The following discussion therefore will be limited to the defendants' request for qualified immunity pertaining to the remaining Fourth Amendment violations. In this case, none of the three defendants is entitled to qualified immunity. There is no doubt that such actions constituting malicious prosecution, including a material fabrication, the planting of evidence, the seizing of property, the use of excessive force, and a search, seizure, arrest and initiation of criminal proceedings without probable all violate the Fourth Amendment. See Burke v. Town of Wapole, 405 F.3d 66, 85 (1st Cir. 2005) (citing Aponte Matos v. Toledo-Davila, 135 F.3d 182, 185 (1st Cir. 1998)). The Court finds that a reasonable official would not have believed that the acts committed by the remaining defendants were lawful in light of clearly established law. Therefore, the defendants' request for qualified immunity is **DENIED.**

**G. Supplemental Claims**

Defendants argue that the Court should dismiss the plaintiffs' Commonwealth tort claims under article 1802 and the Puerto Rico Constitution because dismissal of supplemental claims is appropriate when all federal claims have been dismissed. As explained above, plaintiffs have plead a plausible Fourth Amendment claim pursuant to section 1983; federal claims remain, therefore, and supplemental jurisdiction over the Commonwealth action remains proper. The request for dismissal of the article 1802 and constitutional tort claims is hereby **DENIED.**

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** defendants' motion to dismiss. Plaintiffs' section 1983 claims pursuant to the Fifth and Fourteenth Amendments are **DISMISSED WITH PREJUDICE.** Plaintiffs' supervisory liability claims against Toledo-Davila, Rivera-Miranda, Bermudez-Ortiz, and Velazquez-Gonzalez are **DISMISSED WITH PREJUDICE.** Defendants' request to dismiss plaintiff Colon-Andino's section 1983 claims pursuant to the Fourth Amendment against defendants Ojeda, Donate and Gonzalez-Nieves in their official capacity for injunctive relief and individual capacity for money damages is **DENIED.** The section 1983 claims filed by plaintiffs Colon-Velez, Margarita Andino-Moreno, Nieves-Baez and the conjugal partnership between Colon-Andino and his wife are **DISMISSED.** Defendants' request to

dismiss plaintiffs' article 1802 tort claim and the claim under the Commonwealth Constitution is **DENIED.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, July 13, 2009.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE